SUCN. DE J. SERRALLÉS, peticionaria y apelada, v. HON. RAFAEL SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelante. SUCN. DE J. SERRALLÉS, demandante y apelante, *v.* HON. RAFAEL SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelado.

Núms. 7182 y 7152.—*Sometidos*: Febrero 19, 1937. *Resueltos*: Enero 18, 1938.

*Hon. Procurador General B. Fernández García y R. Cordovés Arana,*
*Procurador General Auxiliar,* abogados del demandado, apelante
:y apelado; *F. Parra Capó y Leopoldo Tormes García,* abogados
de la peticionaria y demandante, apelada y apelante.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Los siguientes hechos fueron estipulados por las partes en
la corte inferior y sirvieron de base a su sentencia.

En diciembre 31, 1919, la Sucesión Serrallés, que en ade-
lante será llamada "la contribuyente," pagó al Tesorero de
Puerto Rico la suma de \$30,407.08, por sus contribuciones
:sobre ingresos para el año contributivo 1917–18. El Teso-
rero redujo esta suma a \$15,375.28, y luego de una apelación
para ante la Junta de Revisión e Igualamiento, la misma fué
reducida nuevamente a \$14,840.20. La suma de \$15,566.88
pagada en exceso fué entonces devuelta a la contribuyente.
Como ésta no estaba satisfecha, al ser reconsiderada por la
junta la contribución quedó finalmente fijada en la suma de
:\$10,700.96. El 22 de septiembre de 1924 el Tesorero informó
por escrito a la contribuyente que el saldo de \$4,139.24 le
:sería devuelto tan pronto como se cumplieran los trámites
:de ley.

En octubre 31, 1919, la misma contribuyente radicó su pla-
:nilla de contribuciones sobre ingresos para el año contribu-
:tivo 1918–19, en la que se computaba su contribución en la

suma de $31,466.04. Esta cantidad fué pagada bajo protesta, en dos plazos, uno en mayo 19, 1920, y otro en septiembre 15 del mismo año. Luego de una tasación de deficiencia por el Tesorero y de una subsiguiente apelación para ante la Junta de Revisión e Igualamiento, se resolvió que la contribuyente adeudaba al Tesorero la suma adicional de $14,426.08. En enero 22, 1923, la contribuyente efectuó un pago parcial de $7,213.04 a cuenta del referido saldo desfavorable. Posteriormente solicitó de la junta la reconsideración y como resultado de ella se imputó al Tesorero haber cobrado, en exceso, la suma de *$6,077*. En *septiembre 22, 1924,* este funcionario informó a la contribuyente por escrito, que la anterior suma ($6,077) le sería devuelta cuando se llenaran los trámites de ley. En *diciembre 18* del mismo año el Tesorero finalmente determinó dicho pago en exceso y notificó a la contribuyente el 23 del mismo mes, y al Colector local de Rentas Internas de Ponce en diciembre 18, que la suma sería devuelta a la contribuyente directamente por el departamento.

Surgieron dificultades entre el Tesorero y la contribuyente con respecto a las contribuciones sobre ingresos para el año 1919–20 y sobre un mes adicional de 1920. La Sucesión Serrallés originalmente radicó una planilla de contribuciones sobre ingresos, para los trece meses, ascendente a $173,346.48. Esta suma fué pagada en cuatro plazos, uno en octubre 24, 1921, otro en febrero 7, 1923, y los otros dos en marzo 12, 1923.

En el ínterin el Tesorero impuso tasaciones de deficiencia de $143,764.60 para el período de doce meses, y de $28,833.48 para el término adicional. Luego de una apelación para ante la Junta de Revisión e Igualamiento, el saldo desfavorable para el período mayor fué reducido a $41,101.96, y el del período menor a $17,870.72. En enero 2, 1923, la contribuyente pagó *bajo protesta* $10,326.87 a cuenta de los $41,101.96 y $4,490.02 a cuenta de los $17,870.72. Como resultado de una reconsideración por la Junta se halló que existía un pago en exceso por parte de la contribuyente para el año 1919–20

ascendente a $44,118.17. Las partes están de acuerdo en cuanto a esta suma. En *abril 9, 1924,* el Tesorero escribió a la contribuyente notificándole que la suma anterior podía ser devuelta tan pronto como se llenara y devolviera el formulario núm. 40. Posteriormente se concedieron créditos de $7,371.90 y $22,595.08 a la contribuyente por contribuciones sobre ingresos para los años 1923 y 1924, lo que redujo el pago en exceso para 1919–20 a $14,151.19. Estos créditos fueron concedidos de conformidad con un convenio celebrado entre las partes.

Así las cosas, la contribuyente en febrero 26, 1926, solicitó que el importe de una contribución especial sobre ingresos para el año 1924 fuera rebajado del saldo a su favor. Se rehusó esta operación porque el Contador de Puerto Rico con fecha primero de marzo de 1926 solicitó del Tesorero que descontinuara la concesión de créditos adicionales a la Sucesión Serrallés fundado en que una investigación practicada por Auditoría había revelado que la contribuyente adeudaba al Pueblo de Puerto Rico la suma de $82,346.34. El Pueblo de Puerto Rico instó demanda para recobrar esta suma en 1926 y se dictó sentencia en su contra, que fué firme en octubre de 1933.

En noviembre 6, 1933, la contribuyente escribió al Tesorero solicitando la devolución de los *$24,367.43* que habían estado pendientes desde febrero de 1926, *y por primera vez* exigió el pago de intereses sobre dicha suma.

Debe insertarse aquí, por el alcance que pueda tener, que en abril 2, 1929, la contribuyente había solicitado se computaran y devolvieran las sumas pagadas en exceso para los años 1917–18, 1918–19 y 1919–20, de conformidad con la determinación final de la Junta de Revisión e Igualamiento de fechas 7 de enero y 12 de agosto de 1924, supra. El Tesorero se negó a esto alegando que existía un pleito pendiente entre El Pueblo de Puerto Rico y la contribuyente en relación con las contribuciones sobre ingresos para dichos años y que tenía que esperar el resultado de dicho pleito. En vista de

ello, en 11 de abril de 1929 la contribuyente radicó un *mandamus* contra el Tesorero y el Contador para la computación y devolución inmediatas de dichos pagos en exceso. Este recurso fué finalmente archivado por la Corte de Distrito el 2 de febrero de 1932 por falta de instancia.

En abril 18, 1934, el Tesorero envió varios ejemplares del formulario núm. 40 para ser llenados por la contribuyente sobre la devolución de $4,139.24 (1917–18), $6,077.00 (1918–19) y $14,151.19 (1919–20). Estos formularios nunca fueron devueltos porque la contribuyente insistía en que se le concedieran intereses sobre estas sumas.

En octubre 18, 1934, el Tesorero informó a la apelada que desde entonces las sumas anteriormente mencionadas estaban a disposición de ella y que las mismas serían pagadas tan pronto como se devolvieran los formularios.

En octubre 17, 1934, la contribuyente instó el recurso de *mandamus* que ahora está ante nos, en que se solicita se ordene al Tesorero acredite a sus contribuciones sobre ingresos para el año 1933, que ascendían a $34,931.73, el saldo de $24,367.43 que figuraba a favor de la contribuyente, más la suma de $17,596.46 por concepto de intereses al 6 por ciento, a contar de la fecha del pago hasta el 18 de abril de 1934. También solicitaba se le concedieran intereses legales sobre esta suma total, o sea $41,963.89, desde el 18 de abril de 1934 hasta que se hiciera el pago o crédito definitivo. Como remedio alternativo solicitaba la devolución inmediata de $41,963.89.

La corte inferior concedió la suma de $24,367.43, más intereses al 6 por ciento anual desde la fecha del cobro ilegal hasta el 18 de octubre de 1934. Ambas partes han apelado separadamente. Consideramos ahora la apelación interpuesta por el Tesorero.

Muchos de los detalles de la controversia serán ampliados al discutir por separado los señalamientos.

■■ Los cinco primeros errores pueden ser agrupados en uno, toda vez que la cuestión presentada por cada uno de

ellos gira sobre idéntico punto. La cuestión precisa a determinarse es la fecha o fechas exactas en que el Tesorero de Puerto Rico concedió el reintegro o crédito definitivo a la contribuyente de las distintas sumas arriba mencionadas, o sean $44,118.17, posteriormente rebajada a $14,151.19; $6,077; y $4,139.24, es decir, un total de $24,367.43. La corte inferior resolvió que esta decisión final tuvo lugar el 18 de octubre de 1934 al notificar el Tesorero a la Sucesión Serrallés que tenía las sumas anteriores a la disposición de ésta, para serle devueltas tan pronto.como la contribuyente llenara y devolviera al departamento cierto formulario (núm. 40). El apelante, por otra parte, sostiene que el Tesorero llegó a su decisión el *9 de abril de 1924* en lo que se refería a la suma de $44,118.17, que luego fué reducida a $14,151.19, por concepto del pago en exceso para el año 1919–20, y en *diciembre 18, 1924,* en lo que concernía a las sumas de $6,077 (cobrada en exceso para el año 1918–19) y $4,139.24 (cobrada en exceso para el año 1917–18).

Los autos sostienen plenamente la conclusión de que en abril 9, 1924, el Tesorero notificó a la contribuyente que tenía un saldo favorable en lo que se refería a sus pagos por contribuciones sobre ingresos para el año 1919–20, ascendente a $44,118.17, suma que le sería devuelta tan pronto como ésta llenara el formulario núm 40. No es menos evidente que en mayo 31, 1924, y en respuesta a una solicitud escrita de la contribuyente, fechada el 26 de mayo de 1924, el Tesorero redujo de la anterior suma $7,371.90 por concepto de contribuciones sobre ingresos para el año 1923. Esta operación se hizo de conformidad con un convenio anterior celebrado entre el Tesorero y la contribuyente al efecto de que los $44,118.17 debían quedar en poder del Tesorero en calidad de depósito, para ser utilizados como un fondo del cual pudieran deducirse las futuras contribuciones sobre ingresos. En agosto 28, 1924, se celebró una transacción similar con respecto a la suma de $22,595.08, que representaba contribuciones sobre ingresos para el año 1924. Estas dos rebajas dejaban un saldo

en poder del Tesorero y a favor de la contribuyente que ascendía a $14,151.19. Nos es difícil resolver, según lo hizo la corte sentenciadora, que en lo que se refería a estos $44,118.17, o sobre aquella parte de dicha cantidad por la cual la contribuyente no obtuvo crédito alguno, el Tesorero no decidió finalmente que se hiciera la devolución hasta el 18 de octubre de 1934. Las anteriores circunstancias hablan por sí mismas. El Tesorero llegó a la determinación de que había un pago en exceso el 9 de abril de 1924 e inmediatamente dió los pasos necesarios para que su departamento hiciera directamente la devolución. Más tarde se celebró el convenio, que podemos calificar de un pacto sobre crédito, y luego los créditos específicos. No tenemos duda alguna, sin considerar los acontecimientos posteriores, de que el 9 de abril de 1924 estaba dentro de las facultades de la contribuyente, con un mero rasgo de la pluma, cobrar u obtener los $44,118.17. Para aquel entonces estaba en vigor la ley de contribuciones sobre ingresos de 1919, según fué enmendada en 1921. Esas leyes no contienen disposición alguna en torno al pago de intereses sobre las sumas a devolverse, o sobre los créditos o pagos en exceso. Así, pues, es evidente que de no haber intervenido alguna otra cosa, a la contribuyente se le hubiera acreditado gradualmente la suma anterior y no hubiese tenido derecho al pago de intereses.

No es menos claro que en diciembre 18, 1924, el Tesorero finalmente llegó a la determinación de que los pagos en exceso para los años contributivos 1917–18 y 1918–19 ascendían a $4,139.24 y $6,077, respectivamente, y dió los pasos necesarios para su definitiva devolución a la contribuyente. Más tarde se celebró o se ratificó un convenio sobre estas sumas, similar al celebrado con respecto al pago en exceso para el año 1919–20. Para esta época el estado de la ley tampoco permitía que se pagaran intereses sobre estas sumas. Aunque no se hicieron rebajas materiales de conformidad con este convenio, no es menos cierto que pudieron ser solicitadas si la contribuyente así lo hubiera deseado. La concesión del cré-

dito o de la devolución quedó terminada, por lo menos temporalmente, en diciembre 18, 1924.

Bajo todas estas circunstancias, resolvemos que la corte cometió error al decidir que no hubo una determinación final sobre la devolución de los $4,139.24 y $6,077 hasta el 18 de octubre, 1934. Irrespectivamente de lo que hubiera de seguir, en diciembre 18, 1924, hubo una oferta definitiva por parte del Tesorero de pagar $4,139.24 y $6,077.

 Los señalamientos sexto, séptimo, octavo y noveno están relacionados entre sí y se refieren a la resolución de la corte inferior con respecto al derecho de la contribuyente a reclamar y recibir intereses de conformidad con las disposiciones del artículo 79 de la Ley 74 de agosto 6, 1925 (Leyes de ese año, pág. 543). Para la debida discusión de estos señalamientos debemos retrotraernos a febrero de 1926. Debe recordarse que para aquel entonces la contribuyente solicitó del Tesorero que la suma de $16,174.70 (contribución especial sobre ingresos para el año 1924), le fuese rebajada de las sumas que el Tesorero ya había resuelto debía recibir. Los autos demuestran que en 1º. de marzo, 1926, el Contador de Puerto Rico informó al Tesorero que luego de haberse practicado una investigación por su oficina, la Sucesión Serrallés adeudaba al Tesoro la suma de $82,346.34 por concepto de contribuciones sobre ingresos correspondientes a los años 1918, 1919 y 1920. Dió instrucciones de que no se concedieran créditos o rebajas adicionales a dicha contribuyente. En armonía con esta carta, el Tesorero denegó el crédito que en febrero 26, 1926, la contribuyente había solicitado.

En junio, 1926, El Pueblo de Puerto Rico instó demanda contra la *Sucesión Serrallés* en cobro de los $82,346.34. Mientras pendía este litigio, la contribuyente, con fecha 2 de abril, 1929, solicitó la devolución de $24,367.43 que habían sido convenidos allá para 1924 y contra cuyo saldo el Tesorero se había negado a acreditar (luego de haber concedido dos créditos anteriores), en 1926, el importe de la contribución especial sobre ingresos de 1924, de acuerdo con el convenio ante-

rior. Esta petición fué denegada debido al pleito iniciado por El Pueblo de Puerto Rico a instancias del Contador, que estaba pendiente. La contribuyente, según se ha dicho antes, radicó entonces un recurso de *mandamus* para obtener la devolución del saldo que aún se le adeudaba, el que fué archivado en 1932 por falta de instancia. La contribuyente, aparentemente, optó por no insistir en su reclamación. En 1933 se dictó sentencia final contra El Pueblo de Puerto Rico en el pleito instruído por éste como resultado de la investigación del Auditor en 1926. Entonces, fué en noviembre, 1933, que la contribuyente presentó su primera solicitud para que se le pagaran intereses.

La corte inferior resolvió que la apelada tenía derecho a intereses sobre la suma principal de conformidad con las disposiciones de los artículos 64, 75 y 79 de la Ley núm. 74 de 1925. Es a la certeza de este pronunciamiento que la segunda serie de errores señalados por el apelante va dirigida. Las partes aplicables de dichos artículos leen:

"Sección 64.—(*a*) Cuando cualquier contribución sobre ingresos o beneficios excesivos impuesta por esta Ley o por la Ley de Contribuciones sobre Ingresos número 59 de 1917, la Ley de Contribuciones sobre Ingresos número 80 de 1919, la Ley de Contribuciones sobre Ingresos número 43 de 1921, o por cualquiera de dichas leyes según han sido enmendadas, o por cualquiera otra ley, se hubiere pagado en exceso, el montante de dicho exceso será acreditado a cualquier contribución sobre ingresos o beneficios excesivos o a cualquier plazo de las mismas que estuviere vencido, y cualquier remanente de dicho exceso será reintegrado inmediatamente al contribuyente.

" . . . . . . . . .

"Sección 75.—El Tesorero queda autorizado para remitir, reintegrar y devolver todas las contribuciones erróneas o ilegalmente impuestas o cobradas y las penalidades cobradas sin autoridad, y toda contribución que aparezca injustamente impuesta o en cantidad excesiva o de cualquier manera erróneamente cobrada; y hará un informe a la Legislatura de Puerto Rico al empezar cada sesión ordinaria, de todas las transacciones que en esta sección se autorizan.

"Sección 79.—Al concederse un crédito o reintegro de una contribución sobre ingresos o beneficios excesivos errónea o ilegalmente

impuesta o cobrada, o de alguna penalidad pecuniaria cobrada sin autoridad, o de alguna suma que fuere excesiva o de algún modo erróneamente cobrada, se abonarán y pagarán intereses sobre el montante de dicho crédito o reintegro del 6 por ciento anual desde la fecha en que dicha contribución, penalidad pecuniaria o suma fuere pagada hasta la fecha de la concesión del reintegro, o, en caso de un crédito, hasta la fecha de vencimiento de la cantidad contra la cual el crédito se otorga; pero si la cantidad contra la cual se otorgare el crédito fuere una tasación adicional, entonces hasta la fecha de la tasación de aquella suma. El término 'tasación adicional' como se emplea en esta sección significa una imposición adicional de una contribución de índole igual a la que fué antes parcialmente pagada.''

Según la conclusión a que hemos llegado en el curso de la discusión de los primeros cinco señalamientos la ley de 1925 sería ordinariamente inaplicable, pues es el estatuto en vigor al tiempo de concederse la devolución o crédito el que rige la cuestión de intereses. Este precepto de ley está aceptado por ambas partes y sostenido por la jurisprudencia.

Hasta el año 1926 existía un statu quo entre el Tesorero y la contribuyente, a virtud del cual esta última podía retirar a manera de crédito cualquier suma que se le adeudare, sin objeción alguna por el Tesorero, mas en dicho año 1926 el Tesorero a instancias del Contador, modificó su posición y entonces se le hizo imposible a la contribuyente obtener su dinero o utilizarlo como crédito para las contribuciones corrientes.

Ahora bien, es cierto que según la decisión en el caso de *Fajardo Sugar Company of Puerto Rico* v. *F. G. Holcomb, Auditor,* 16 F. (2d) 92, ni el Tesorero ni el Contador tienen el derecho legal a retener estos fondos, aunque el Tesorero en realidad actuó por recomendación del Auditor. Desde luego, la contribuyente pudo haber presentado un recurso de *mandamus* o algún otro, para obligar al Tesorero a pagarle la suma que entonces estaba pendiente, pero de ordinario una persona no tiene deber alguno de entablar un litigio para exigir un derecho.

El crédito fué concedido en 1924, pero en 1926 el Tesorero se negó a devolverlo o a aplicar a cuenta el importe cobrado. Este proceder del Tesorero bien directamente o por necesaria inferencia, a nuestro juicio, hizo que la contribuyente cayera dentro de las disposiciones del artículo 79 supra. Ello equivalió a una apropiación o conversión por parte del Tesorero y por ende, a un cobro o retención ilegal a partir de dicha fecha, y puede decirse que la ley de 1925 es aplicable directamente, es decir, en 1926.

Empero, ya fuere directamente aplicable o no, el proceder del Tesorero estuvo, desde el punto de vista de la ley, injustificado y deben pagarse intereses desde la fecha en que hubo una retención sin el consentimiento de la contribuyente. No hay duda de que ésta fué privada del uso de $24,367.43.

De acuerdo con la posición que hemos asumido el recurso de *mandamus* era aplicable no sólo para recobrar la suma principal, que no ha sido impugnada, sino también los intereses desde 1926, fecha en que el Tesorero decidió retener dichos veinticuatro mil dólares. Los intereses se convirtieron en parte de la suma principal y el auto de *mandamus* era tan aplicable a ellos como a cualquiera otra suma.

Las partes han radicado muy extensos alegatos y citado, entre otros, casos de la Corte Suprema de Estados Unidos, algunos de los cuales sostienen que deben pagarse intereses bajo los estatutos en cuestión a partir de la fecha en que hubo la retención o pago ilegal. Es innecesario que citemos o distingamos casos, dada la naturaleza especial del que está ante nos.

El décimo señalamiento suscita la proposición de que toda vez que el derecho a obtener intereses no era un derecho legal claro, el auto de *mandamus* no era el remedio adecuado. Bajo las circunstancias del caso creemos que el derecho de la contribuyente a obtener intereses legales sobre el dinero retenídole era sustancialmente claro.

El siguiente error se refiere a la concesión de intereses durante el período que transcurrió desde la fecha en que se

ordenó originalmente la devolución. Este señalamiento ha sido suficientemente cubierto por la discusión anterior.

Tanto el señalamiento doce como el trece levantan la defensa de prescripción y demora indebida (*laches*). La situación especial aquí envuelta y el amplio criterio que hemos adoptado de la misma excluye la posibilidad de que una u otra defensa sean aplicables.

Los últimos cinco señalamientos o no fueron cometidos o su discusión se ha hecho superflua por la posición asumida por este tribunal en el curso de esta opinión.

■ La sucesión demandante también apeló y señala dos errores. Éstos leen así:

"1. Cometió error la corte inferior al declarar como declaró que la peticionaria tenía derecho a que se le paguen intereses hasta el 18 de octubre de 1934, al tipo del seis por ciento anual, desde que fueron cobradas ilegalmente por el Tesorero de Puerto Rico las cantidades de $4,139.24, $6,077.00 y $14,151.19, por concepto de contribuciones sobre ingresos pagadas en exceso por la peticionaria por los años contributivos de 1918, 1919 y 1920, respectivamente, y no hasta la fecha en que el demandado, Tesorero de Puerto Rico, pague a la peticionaria aquí esas cantidades.

"2. Cometió error la corte inferior al no imponer las costas en este procedimiento al demandado, Tesorero de Puerto Rico."

Fué con fecha 18 de abril de 1934 que el Tesorero informó por escrito a la contribuyente que tan pronto como ésta llenara cierto formulario se le devolvería la cantidad de $24,367.43 pagada en exceso. Creemos que a partir de dicha fecha no deben concederse intereses sobre la suma principal, toda vez que la devolución fué oficialmente concedida para aquel entonces.

En lo que a la cuestión de costas se refiere, nos sentimos inclinados a seguir la discreción ejercida por la corte inferior, especialmente por ser del criterio de que no hubo culpa o temeridad por parte del Tesorero. La cuestión de intereses era debatible, según puede verse de la discusión anterior.

*La sentencia debe ser modificada en el sentido de conceder a la demandante la suma principal, con intereses a razón del 6 por ciento anual desde el 26 de febrero de 1926 hasta el 18 de abril de 1934, y así modificada, confirmada.*

El Juez Asociado Señor Córdova Dávila no intervino.